UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRED THOMAS JR., | Civil Action No. 3:12-cv-7476 |
| | MAS-DEA |
| Plaintiff, | |
| | MEMORANDUM OPINION |
| v. | AND ORDER |
| LOUIS BIRD, et al., | |
| Defendants. | |

**ARPERT, United States Magistrate Judge**

This matter comes before the Court on a Motion by Plaintiff Fred Thomas Jr., ("Thomas") for Leave to File a Second Amended Complaint. ECF No. 93. Defendants oppose Plaintiff's Motion. ECF No. 96. The Court has fully reviewed the submissions of the parties and considers same without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Plaintiff's Motion for Leave to File a Second Amended Complaint is **DENIED.**

I. **BACKGROUND**[1]

Plaintiff was a prisoner at Burlington County Jail in Mount Holly, New Jersey when he filed the initial Complaint on December 6, 2012, alleging violations of his civil rights under 42 U.S.C. § 1983 related to his confinement. ECF No. 1, 85. Plaintiff alleges Defendants "Sco. L. Bird, Sgt. Barnwell and C.O. Davis, without provocation or justification, assaulted Plaintiff, kicking and punching him while he attempted to cover himself." ECF No. 85 at ¶¶ 13-15. Plaintiff alleges Defendants also pulled his hair out and sprayed him with mace or pepper spray.

---

[1] The following facts are taken from Mr. Thomas's Amended Complaint and assumed true for purposes of this Memorandum and Order.

1

Id. at ¶¶ 15-16. After handcuffing Plaintiff and leading him into a detention cell, Defendant Davis continued to beat Plaintiff and pulled out his dreadlocks. Id. at ¶¶17-18. As a result of the attack, Plaintiff suffered serious physical injuries, including to his back, and can not regrow hair where the dreadlocks were pulled out. Id. at ¶ 22.

Plaintiff filed his Complaint in December 2012. ECF No. 1. An Order granting Plaintiff's accompanying application to proceed *in forma pauperis* was recorded in July 2013. ECF No. 2. That Order also provided that summons were to be issued, to be served by the United States Marshals Service. Id. However, in June 2014 when Plaintiff applied for Default to be entered against Defendants, the Clerk of the Court responded that Default could not be granted because "Defendants have not been served with the Summons and the Complaint." ECF No. 12; *see also* Clerk's June 19, 2014 Docket Entry. In May 2015, U.S. District Judge Michael A. Shipp again ordered that summons should be issued, to be served by the Marshals Service. ECF No. 19. On September 2, 2015, summons to C.O. Davis, Sgt. Barnwell and Sco. L. Bird were returned by the Marshals Service unexecuted. ECF No. 22. Handwritten comments on the Process Receipt and Return Form indicated that Sco. L. Bird "does not work at the Burlington Cty. Jail. Please check the correct spelling of the individual's name to be served." Id. at p.1. The comments indicated Sgt. Barnwell "retired from the Burlington Cty. Jail," and that "[t]here are numerous officers with the last name of Davis. <u>You must have a first and last name for service</u>." Id. at pp. 4,7 (<u>emphasis in original</u>). On December 21, 2015, Judge Shipp ordered the Clerk to serve a copy of the Complaint on the Burlington County Jail "for the purpose of obtaining the contact information of the named-defendants." ECF No. 24. On April 18, 2016, Judge Shipp extended the time for Plaintiff to serve Defendants and ordered that the "Burlington County Department of Corrections shall provide the last known addresses of Defendants or accept service on their

behalf." ECF No. 27. In response, Mildred Scholtz, then Warden of the Burlington County Department of Corrections, in a letter dated June 1, 2016, provided a last-known address for a "Sgt. Barnwell" and stating that there was "no corrections officer, current or former, named 'Sco. L. Bird' with our facility under that spelling or designation." ECF No. 30 (sealed). On June 6, 2016, a Summons was issued to Sgt. Barnwell at the address provided by Ms. Scholtz. ECF No. 31. The Summons was returned unexecuted in July 2016. ECF No. 34. In August 2016, Judge Shipp ordered that the "U.S. Marshal shall, within 30 days from of this text order, file an affidavit describing the circumstances surrounding the service of Defendant Sgt. Barnwell that led to the unexecuted summons. In particular, the Marshal shall inform the Court whether Defendant Barnwell affirmatively refused service." ECF No. 36. On September 7, 2016, the Summons to Sgt. Barnwell was returned as having been executed on September 6, 2018. ECF No. 37. During the next two months, counsel for Defendant Barnwell entered an appearance, applied for an extension for filing an answer and moved to dismiss the Complaint. ECF Nos. 38,39,41. Concomitantly, Plaintiff and the Court exchanged correspondence regarding service on the other named defendants. ECF Nos. 40,43,46. On March 30, 2017, Judge Shipp issued an Order to Show Cause in which Plaintiff was directed to explain why the Complaint should not be dismissed as to "C.O. Davis." ECF No. 49. This correspondence was complicated by, as at least fourteen docket entries explain, mail to Plaintiff that was returned as undeliverable. ECF Nos. 53,55,58,60,62,64-67,71-73,75,78. The communication issues stemmed at least in part from Plaintiff's transfers among various New Jersey Department of Corrections locations. Id. In the meantime, Defendant Barnwell's Motion to Dismiss was denied, and Defendant Barnwell filed an Answer to the Complaint. ECF Nos. 48,50. In September 2017, Plaintiff moved for the appointment of pro bono counsel. ECF No. 61. That motion was granted in December 2017. ECF

No. 77. Plaintiff's counsel filed notices of appearance in January 2018. ECF No. 79-80. In April 2018, Plaintiff filed an Amended Complaint. ECF No. 85. Among other things, that Amended Complaint more fully identified the non-Barnwell defendants as Louis Byrd and Demetrius Davis. Id. Defendants Byrd and Davis filed an Answer to the Amended Complaint on May 2, 2018. ECF No. 86. On August 31, 2018, Plaintiff filed the instant Motion seeking Leave to File a Second Amended Complaint. ECF No. 93. Defendants oppose the motion. ECF No. 96.

II. **LEGAL STANDARD**

A party may amend its pleading once as a matter of right within either (1) twenty-one days of serving it; or (2) where the pleading is one to which a responsive pleading is required, the earlier of twenty-one days following service of the responsive pleading or a motion to dismiss. Fed. R. Civ. P. 15(a)(1). Once those deadlines have expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The decision to grant leave to amend rests within the sound discretion of the trial court. Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, courts consider the following factors: "(1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment." See Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174 (3d Cir. 2010) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

III. DISCUSSION

Plaintiff filed the instant motion seeking to add one count against a new defendant, Mildred Scholtz, Warden of the Burlington County Jail from early 2015 through April 2018. Pl. Br. in Support of Mot. to Amend, ECF No. 93-1 at p.5. Plaintiff alleges Ms. Scholtz violated his

4

"constitutional right to access the courts under the First and Fourteenth Amendments" and his rights under 42 U.S.C. § 1983 by improperly concealing information Judge Shipp required County Jail officials to provide via the December 21, 2015 and April 18, 2016 Orders referred to above, namely contact information for Defendants Davis and Byrd. Id. *See also* ECF Nos. 24, 27. Plaintiff contends Ms. Scholtz's concealment delayed by more than two years Plaintiff's ability to serve Defendants. Id.

As an initial matter, Plaintiff urges that in the Third Circuit "pro se plaintiffs have been granted even more freedom when seeking leave to amend a pleading." Pl.'s Br. in Support of Mot. at p.5, citing Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981). But, the Court observes that Plaintiff stopped being a pro se plaintiff when this Court granted Plaintiff's Motion to Appoint Pro Bono counsel in December 2017. ECF No. 77. Plaintiff's pro bono counsel filed a notice of appearance the following month. ECF No. 79. Thus, on its face Weaver is inapplicable. That said, the Court observes that the Order granting Plaintiff's Motion to Appoint Pro Bono was granted in December 2017, or after the bulk of the delays chronicled above had occurred. Thus, the Court approaches this motion with the liberality due a pro se plaintiff called for by Weaver.

Plaintiff says the touchstone for granting a motion to amend is whether it would result in prejudice to defendants. Pl.'s Br. at p.5 (*citing* Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d Cir. 1993). To that end, Plaintiff cites the three-prong test set forth in Long v. Wilson as setting the Third Circuit's inquiry into the potential of a proposed amended complaint to unduly prejudice Defendants, where the Long factors are: (1) whether permitting the amendment would "require the non-movant to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction." Id. (*citing* Long, 393 F.3d 390, 400 (3d Cir.

5

2004). Plaintiff contends the granting of the instant motion would not result in prejudice to Defendants, because any additional discovery merited by a Second Amended Complaint would be minimal, as would any delay. Id. at p.11.

As stated above, in determining a motion for leave to amend, courts consider the following factors: "(1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment." *See* Great Western, 615 F.3d at 174 (*quoting* Foman, 371 U.S. at 182).

Looking at Plaintiff's briefs through the prism of the Great Western factors, Plaintiff says granting the Motion would not cause undue delay, that it is proffered in good faith, that there would be no undue prejudice to Defendants, and that the Amendment would not be futile. Plaintiff adds that he has been diligent in presenting these allegations, explaining that he was unable to deduce Ms. Scholtz's conduct until pro bono counsel was named, as the June 2016 correspondence from Ms. Scholtz to the Court in response to the above-mentioned Court Orders was filed under seal and thus unavailable to Plaintiff. Id. Once the motion to appoint pro bono counsel was granted, Plaintiff's counsel was able to gain access to that sealed correspondence, which stated that "[t]here is no correctional officer, current or former, named 'Sco. L. Bird' with our facility under that spelling and designation." Id. Ultimately, however, Plaintiff was able to name as a defendant Louis Byrd in an Amended Complaint. ECF No. 85. And, an Answer was filed by all three Defendants a month later. ECF No. 86.

Plaintiff contends the proposed second Amended Complaint would not be futile because it "alleges all of the required elements to bring this claim." Id. Plaintiff cites Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety-Div. of State Police as setting the standard

for concealment as, "where the state officials wrongfully and intentionally conceal information crucial to a person's ability to obtain redress through the courts, and do so for the purpose of frustrating that right, and that concealment and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled." Id. at 11-12 (*quoting* Gibson, 411 F.3d 427, 445 (3d Cir. 2005). Plaintiff contends Ms. Scholtz "wrongfully and intentionally concealed information while serving as Warden at the Burlington County Jail" and that the information concealed "was critical to obtaining redress from the courts because he needed the information to serve the defendants." Id. at 12. Plaintiff says the Motion is timely because it is "well within the statute of limitations for bringing" such a claim. Id. The statute of limitations on a § 1983 claim, Plaintiff says, "begins to accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based." Id. (*citing* Mullen v. Port Authority of New York and New Jersey, 100 F.Supp.2d 249, 260 (D.N.J. 1999). Plaintiff contends he did not know of Ms. Scholtz's concealment earlier because her correspondence was filed under seal, meaning it was for Attorneys' Eyes Only, and so was not accessible by Plaintiff. Id. It was not until pro bono counsel was appointed that Plaintiff knew of the Scholtz letter, and even then, Plaintiff's counsel had to obtain a Court Order to access that correspondence. Id. at pp.12-13 (*citing* ECF Nos. 89, 91). Plaintiff contends that at no point before the week before the instant Motion was filed "could Mr. Thomas have known, had reason to know, or even had the ability to know" of Ms. Scholtz's "actions attempting to cover up the attack on Mr. Thomas." Id. at p.13.

Finally, Plaintiff says the proposed Second Amended Complaint would not violate Fed. R. Civ. P. 20(a)(2) regarding joinder of parties, because the proposed claim against Ms. Scholtz "inherently depends upon the underlying claim against the current defendants." Id.

Defendants press only one ground of objection: futility. Defendants cite Christopher v. Harbury for the proposition that there are only two types of denial-of-access claims: one in which official action presently denies a plaintiff the opportunity to litigate a case, and one in which a case "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Defs.' Br. in Opp. to Mot., *see* ECF No. 96 at pp.4-5 (*quoting* Harbury, 536 U.S. 403, 412-414 (2002)). Defendants contend Plaintiff can not state the former type of claim because for nearly six years he has been, and still is, actively litigating his case, and thus no official action denied or is denying him that opportunity. Id. at p.6. And, Defendants contend, any claim Plaintiff might have under the second denial-of-access category is premature, because such a claim is, by its very nature, backward looking, meaning it accrues only after either when time has expired for filing the underlying claim or when a filed claim has reached an unsatisfactory conclusion. Id. at p.7.

The Court begins by observing that it is well established that prisoners have a right of access to the courts. *See* Schreane v. Holt, 482 F.App'x 674, 676 (3d Cir. 2012) (*citing* Lewis v. Casey, 518 U.S. 343 (1996). As the United States Supreme Court has explained, there are essentially two categories of denial-of-access claims, forward looking and backward looking. Harbury, 536 U.S. at 416–17. In the forward-looking tier are "claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." Id. at 413. Of these cases, the Supreme Court stated:

> "the essence of the access claim is that official action is *presently denying* an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." Id. (*emphasis added*)

To illustrate the point, Justice Souter explained, for instance, that where the denial-of-access claim in a prisoner-litigation setting was based on filing fees a plaintiff could not afford, "the object is an order requiring waiver of a fee to open the courthouse door for desired litigation." Id. at 413.

Of the backward-looking category, Justice Souter stated that it "covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future. The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case." Id. at 413-414. The goal of this class of claims "is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." Id. at 414.

To establish a violation of the right of access in a backward-looking claim, an inmate must demonstrate that: "(1) he suffered an 'actual injury' (i.e., that he lost an opportunity to pursue a nonfrivolous claim); and (2) he has no other remedy, save the present civil rights suit, that can possibly compensate for the lost claim." Schreane, 482 F.App'x at 676 (*citing* Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008)). In addition, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Monroe, 536 F.3d at 205-206 (*citing* Harbury, 536 U.S. at 416–17).

Here, Plaintiff clearly has not lost an opportunity to pursue any claim, let alone a nonfrivolous claim, because he is pursuing the instant lawsuit. Thus, Plaintiff can not state a backward-looking denial-of-access claim. As a result, the Court will examine the proposed Second Amended Complaint through the rubric of a forward-looking claim.

In the proposed Second Amended Complaint, Plaintiff alleges Ms. Scholtz violated his "constitutional right to access the courts under the First and Fourteenth Amendments" and his 42 U.S.C. § 1983 rights by improperly concealing information Judge Shipp required County Jail officials to provide via the December 21, 2015 and April 18, 2016 Orders referred to above, namely contact information for Defendants Barnwell, Davis and Byrd. See Proposed Second Amended Complaint at ECF No. 93-2 at ¶29-30; *see also* ECF Nos. 24, 27. Plaintiff alleges the violation of those rights delayed his lawsuit and caused the spoliation of evidence. Id. at ¶¶30,32.

The December 2015 Order followed two Notices of Call of Dismissal brought by the Court because more than 120 days had passed in the litigation without any proceedings. ECF Nos. 7, 15. While Plaintiff had communicated with the Court by letter seven times to that point, three letters from the Court to Plaintiff were returned as undeliverable though the addresses on the three Court letters matched the return addresses provided on Plaintiff's correspondence. ECF Nos. 5,6,17. In May 2015, Plaintiff informed the Court that he had been moved at an unspecified time to Bayside State Prison from the Mercer County Jail. ECF No. 18. The next day, Judge Shipp ordered the Clerk of the Court to issue an alias, or a second, summons to serve Defendants. ECF No. 19. That summons was returned unexecuted in September 2015. ECF No. 22. In a letter that same month, Plaintiff informed the Court that the Burlington County Department of Corrections would not provide Plaintiff with contact information for Defendants, and he sought help from the Court in discovering the full identities of Defendants in order to effectuate service. ECF No. 23. Judge Shipp in December 2015 ordered Plaintiff to provide the Court "with any additional information Plaintiff has that may be used to identify Defendant C.O. Davis." ECF No. 24. Plaintiff responded by letter dated January 10, 2016, to say he believed Defendant C.O. Davis's name was D.C. Davis, to provide a general physical description of

10

Defendant Davis, and to advise the Court that more complete contact information likely could be provided by the Burlington County Prosecutor's Office. ECF No. 26. In April 2016, Judge Shipp ordered the Burlington County Department of Corrections to either provide contact information for the Defendants or to accept service on their behalf. ECF No. 27. It was in reaction to that Order that Ms. Scholtz responded by letter dated June 1, 2016 with contact information for Sgt. Barnwell—but not with his first name—and stating that "[t]here is no correctional officer, current or former, named 'Sco. L. Bird' with our facility under that spelling and designation." ECF No. 30. Plaintiff contends Ms. Scholtz knew all along that "Sco. L. Bird" referred to Corrections Officer Louis Byrd and that her concealment of this information delayed by more than two years Plaintiff's ability to serve Defendants. Id.

As stated in Harbury, the goal of a forward-looking denial-of-access claim is the removal of the obstacle to pursuing the desired litigation. Id. at 413. In his Complaint and Amended Complaint, Plaintiff has successfully pursued a claim that his civil rights were violated by Defendant corrections officers, where by success the Court means he filed the instant action. Indeed, Plaintiff's claims have survived two Notice of call for Dismissals, ECF Nos. 7,15, one Motion to Dismiss, ECF No. 41, one Order to Show Cause, ECF No. 49, and two Motions for Summary Judgment. ECF Nos. 68,70.

"In forward-looking claims what matters is that the litigation opportunity has been lost in the short term." A.M. v. New Mexico Dep't of Health, 148 F. Supp. 3d 1232, 1281 (D.N.M. 2015) (*citing* Harbury, 536 U.S. at 413). "The objective of a forward-looking claim is to 'place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed.'" Id. (*quoting* Harbury, 536 U.S. at 413).

The Court recognizes first that this litigation is quite old, more than six years having elapsed since the Complaint was filed. The Court further recognizes that Plaintiff experienced significant obstacles and delays in effectuating service to Defendants, delays that appear to have had little to do with circumstances in Plaintiff's control, such as being moved to different jails, experiencing delays in receiving his legal mail and having no ability to appear in court. See e.g., ECF Nos. 5,6,8,9,12,13,14,17,18,23,35. Finally, the Court is dismayed by the 2016 letter from Ms. Scholtz indicating there is "no correctional officer, current or former, named 'Sco. L. Bird' with our facility under that spelling and designation," when Ms. Scholtz allegedly had attended a disciplinary hearing for Corrections Officer Louis Byrd in 2011 regarding the events that are the subject of this litigation. See Proposed Second Amended Complaint at ECF No. 93-2 at ¶30.

Plaintiff directs the Court's attention to Walton v. Denlinger, an unpublished case in which an Eastern District of Pennsylvania Court found a three-and-a-half-year delay in a state court's processing of a prisoner's notice of appeal to be a "substantial delay" that was "a sufficient injury for purposes of Plaintiff's denial of access claim." Walton, No. CIV.A.05-5170, 2007 WL 4615960, at *4 (E.D. Pa. Dec. 21, 2007). Despite the delay, the prisoner's appeal was being heard. Id. at *2. The court denied defendant's summary judgment motion. Id. at *4.

The Court finds Plaintiff's reliance on Walton inapplicable. Rather, the Court looks to the Third Circuit's guidance in Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety, 411 F.3d 427,445 (3d Cir. 2005) *overruled in part on other grounds* as noted in Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010) (*citing* Estate of Smith v. Marasco, 318 F.3d 497, 511 (3d Cir.2003)) (*quoting* Swekel v. City of River Rouge, 119 F.3d 1259, 1262–63 (6th Cir.1997)). There, the Third Circuit recognized that a denial-of-access claim is available where officials "wrongfully and intentionally conceal information crucial to a person's ability to obtain redress

through the courts, and do so for the purpose of frustrating that right, and that concealment, and the delay engendered by it *substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled.*" Gibson, 411 F.3d at 445 (*emphasis added*). As U.S. District Court Judge Jerome B. Simandle elsewhere explained, in Gibson "the inmate plaintiff alleged state police officers and other government officials wrongfully and intentionally concealed exculpatory material concerning racial profiling by the state police department, the surfacing of which led to the reversal of the plaintiff's conviction." Hopkins v. Bondiskey, No. CIV. 12-5134 JBS, 2013 WL 1144930, at *12, n.5 (D.N.J. Mar. 18, 2013) (*citing* Gibson, 411 F.3d at 445). But the Third Circuit held that "though the attorney general defendants' actions had the unfortunate result of perpetuating his incarceration for several years, the plaintiff had alleged no facts to show that the actions of attorney general defendants were directed at denying relief "to people like the plaintiff." Hopkins, 2013 WL 1144930 at *12, N.5 (*citing* Gibson, 411 F.3d at 445); *see also* Burkett v. Newman, 2012 WL 1038914, *3–4 (W.D.Pa. Feb. 21, 2012).

Similarly, Plaintiff in the instant Motion and the proposed Second Amended Complaint does not plead the alleged delay nor any wrongful and intentional concealment of information crucial to the litigation with a sufficient factual basis to satisfy either Gibson or the pleading standards of Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Plaintiff alleges Ms. Scholtz's "withholding, and never providing, [the] crucial information about Officer Byrd that was in Warden Scholtz's possession caused a delay of over two-years [sic] in instituting Mr. Thomas's claims against" Defendants. See ECF No. 93-2 at ¶30. But, Plaintiff neither states expressly nor pleads with any specificity that Ms. Scholtz's

"withholding" was carried out wrongfully and with the intent of hindering this litigation. Also, Defendants persuasively ask how Plaintiff can claim to not having had that information since discovery shows that Plaintiff "filed a criminal charge of simple assault against defendant, Corrections Officer Byrd, which was heard and dismissed in Mount Holly Township Municipal Court on September 8, 2011." Defs.' Br. in Opp. to Mot. to Am. Compl. at p.6. Indeed, Plaintiff by letter dated September 9, 2015, in response to the Court's Notice for Call of Dismiss and referencing the myriad problems experienced in effectuating service on Defendants, asked that the Court order the Marshals Service to contact the Burlington County Prosecutors for the contact information for Defendants. ECF No. 23. Thus, even if Plaintiff was not in possession of sufficiently accurate contact information for Defendants Barnwell, Davis and Byrd, he appears to have known from very early on in this litigation how to get that information. This is not to say the Court attributes the myriad service issues to Plaintiff. As stated above, the Court recognizes that much of those delays were the result of circumstances beyond Plaintiff's control. But, it is to say that Plaintiff has not stated how those delays of service can be attributed to alleged wrongful and intentional acts by Ms. Scholtz.

The proposed Second Amended Complaint also does not explicitly define, though the Court infers, the alleged delay. Plaintiff puts the delay at more than two years but does not explain the parameters of that span. Rather, the Court infers from Plaintiff's writings that the delay spanned from the Warden's June 1, 2016 letter to the August 15, 2018, Order granting Plaintiff's Counsel access to a copy of that sealed letter. But, the Court observes that Plaintiff in April 2018, or less than two years from the June 2016 letter, filed an Amended Complaint that provided the full and corrected names for Defendants David, Byrd and Barwell. ECF No. 85. That is as much as a four-month difference in time spans. Regardless, while Plaintiff says this

delayed the case, in actuality it was during the June 1, 2016 to August 15, 2018 period that the case began to progress procedurally, with Defendant Barnwell accepting service and his counsel filing a notice of appearance, applying for more time to file an answer, filing a Motion to Dismiss and an Answer, and Motion for Summary Judgment. ECF Nos. 37-39, 41, 68.

Finally, the Court returns to the instruction of the U.S. Supreme Court that "the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." Harbury, 536 U.S. at 413. As an example of the forward-looking mechanism, Justice Souter stated that where the denial-of-access claim in a prisoner-litigation setting was filing fees that the Plaintiff could not afford, "the object is an order requiring waiver of a fee to open the courthouse door for desired litigation." Id. at 413. Here, the alleged obstacle to the courthouse door in the proposed Second Amended Complaint is Ms. Scholtz's concealment of full and accurate contact information for Defendants Davis, Byrd and Barnwell. However, as noted above, Plaintiff opened the courthouse door in December 2012 with the initial Complaint, though it wasn't actually filed to the docket until July 2013. And even if there was an obstacle to the courthouse door, that obstacle already has been removed, as evidenced by the addition of full names for each of the original three Defendants, each of whom has been a fully named party to this case since at least the filing of the Amended Complaint in April 2018. What Plaintiff desires, rather, is a separate recovery from Ms. Scholtz for the injury that is the alleged substantial delay. Pl. Reply Br. at p.2. But, the Harbury line of jurisprudence stands in part for the proposition that such relief is reserved for backward-looking denial-of-access claims, where a plaintiff "has no other remedy to compensate for" his lost claim. Monroe, 536 F.3d at 206. Because Plaintiff seeks a backward-looking recovery on forward-looking alleged facts, he does not state a claim on

15

which relief can be granted. Therefore, the proposed Second Amended Complaint would be futile as to any alleged denial-of-access claim stemming from any concealment by Ms. Scholtz of Defendants' information.

Delay caused by concealment of Defendant officers' information is not the limit of the grounds of the injury alleged by Plaintiff in the proposed Second Amended Complaint. He also alleges the delay caused spoliation of evidence, "such as video evidence of the beating that occurred in the 'lock-up' cell." ECF No. 92-2 at ¶32. Defendant says any video of that lock-up or detention cell would have been recorded over at some point in 2011 by the looping recording system used by the jail. Defs.' Br. at p.6. Defendant further points out that Plaintiff didn't bring his action until December 2012, by which time any video of that lock-up or detention cell would not have been discoverable because of that looping system. Id. Regardless, the loss of evidence that frustrates a plaintiff's civil-rights claim falls into the category of a backward-looking denial-of-access claim. Because Plaintiff here again seeks a backward-looking recovery on forward-looking alleged facts, he does not state a claim on which relief can be granted. Therefore, the proposed Second Amended Complaint would be futile as to any alleged loss of evidence.

**IV. CONCLUSION AND ORDER**

Accordingly, having considered the papers submitted pursuant to Federal Rule of Civil Procedure 78 and for the reasons set forth above,

**IT IS** on this of 19th day of December 2018,

**ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint [ECF No. 93] is **DENIED.**

                                          s/ Douglas E. Arpert

                                          DOUGLAS E. ARPERT
                                          UNITED STATES MAGISTRATE JUDGE